IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| LUKE ADAM STANTON | § | |
| VS. | § | CIVIL ACTION NO. 1:19-cv-107 |
| JEFFREY R. WOODARD, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Luke Adam Stanton, an inmate confined at the Stiles Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma pauperis*, brings this lawsuit pursuant to 42 U.S.C. § 1983.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Plaintiff claims Defendant Jeffrey R. Woodard, a lieutenant at the Stiles Unit, made life-endangering decisions by not allowing inmates to receive diabetic insulin injections at the times prescribed by UTMB Medical Physicians. Plaintiff asserts that his autoimmune system is endangered by not receiving diabetic insulin injections around the same time daily, as prescribed.

Plaintiff claims he filed grievances regarding Woodard's actions to Defendant Aaron J. Tompkins, an assistant warden at the Stiles Unit, and to "the TDCJ-CID Agency." Plaintiff claims the agency "concedes and is reviewing for [s]taff misconduct."

Next, Plaintiff claims he exercised his First Amendment rights to Defendant Kaylin R. Vinson, a correctional officer, and she went to her supervisor, Sergeant Banks. Unsatisfied with the results, Plaintiff claims Defendant Vinson then went to her uncle Defendant Pedro M. Boykin, a captain at the unit. Plaintiff alleges Defendant Boykin then called him to his office on August 5, 2017 "for Retaliatory Treatment." Plaintiff claims Defendant Boykin assaulted him by "pushing him in the chest hard, causing injury." Plaintiff alleges that when Defendant Boykin knocked his back

up against the hall wall, he stated to Defendant Boykin: "Please don't do that!" Plaintiff alleges Boykin responded: "I do what the F–k I want, now say something and I'll beat your ass!" Plaintiff contends he said nothing during this "assault." Plaintiff claims Defendants Jeffrey R. Woodard and Jeffrey M. Jessup did not intervene to prevent this assault and threat, and he believed these Defendants also would have hit him.[1] Additionally, Plaintiff asserts that Defendants Davis and Brewer have been placed on notice of the alleged abusive conduct of Defendants Boykin, Woodard, and Jessup by numerous complaints and grievances, but they have failed to take disciplinary action against the Defendants.

Plaintiff claims Defendant Boykin instructed Woodard and Jessup to lock him up for threatening an officer and he was then escorted to the medical clinic for evaluation. At the clinic, Plaintiff alleges Defendant Woodard instructed the physicians to clear him for lock-up and made untoward comments about Plaintiff's propensity to file grievances. Plaintiff states that while the statements were not made to him directly, such statements had the effect of ridicule, harassment, and retaliation for a July 18, 2017 complaint made against Defendant Woodard. Plaintiff claims he was then taken to the One Building holding cell for hours before being rehoused in segregation.

Plaintiff asserts that he submitted a sick call request while confined in segregation seeking an appointment for a neck injury sustained during an alleged assault by officer Boykin on August 5, 2017. Plaintiff claims he was scheduled for a sick call appointment on August 9, 2017, but officers refused to take him to the medical appointment so he could not prove the alleged assault took place. Plaintiff asserts that he had swelling, soreness, and stiffness in his neck.

Next, Plaintiff complains of the alleged theft or loss of personal property. Plaintiff claims that, prior to his lock-up on August 5, 2017, Defendant Banks unlocked his locker and allowed two inmates to remove and steal his personal property. Plaintiff claims Defendant Banks acted out of retaliation. Plaintiff also claims Banks recklessly endangered his safety by announcing to all inmates

---

[1] Plaintiff's claims of retaliation, excessive force, and the failure to intervene against Defendants Vinson, Boykin, Woodard, and Jessup concerning this August 5, 2017 incident have been severed from this action and are proceeding as a separate civil rights action. *See Stanton v. Vinson*, No. 1:24cv312 (E.D. Tex.).

in the area that Plaintiff "is a child molester with about ten [c]hild cases against him." Plaintiff states that he believes prior to this incident his crimes of conviction were not known to the general inmate population. Plaintiff claims he filed grievances to Defendant Tompkins regarding these issues.

On August 8, 2017, Plaintiff states he was served with a prison disciplinary charge for Threatening an Officer. Plaintiff claims that when he attempted to provide an "affidavit/statement" to the investigator, he was informed that he would have to submit that at the disciplinary hearing. Plaintiff claims he also requested the production of a July 29, 2024 investigation and provided a list of potential witnesses.

On August 10, 2017, Plaintiff asserts that he received a disciplinary hearing before Defendant Knod. Plaintiff claims Knod failed to call any of the witnesses he had requested, and Knod stated that no witnesses were requested. Plaintiff states he was allowed to read his affidavit/statement into the hearing record. After the hearing, Plaintiff states he received a written disposition of the hearing finding him guilty as charged. As a result of the disciplinary conviction, Plaintiff states he received the following punishment: (1) a loss of recreation, commissary, and telephone privileges for 45 days; (2) cell restriction for 45 days; and (3) a reduction in time-earning classification from S3 to S4.

Plaintiff states he filed grievances appealing the disciplinary conviction. Plaintiff contends, however, that Defendant Tompkins and the Central Grievance Office denied his appeals.

On August 14, 2017, Plaintiff claims a Unit Classification Committee hearing was conducted in his absence. As a result of the hearing, Plaintiff states he was transferred to close custody housing without his personal property. Plaintiff believes his change in custody and subsequent transfer in housing were retaliation on the part of Defendant Ekeke, one of the committee members.

Plaintiff states that when he received his personal property on August 20, 2017, he noticed various personal items were missing. Plaintiff claims he again filed grievances to prison officials; however, Defendants Davis and Brewer failed to take corrective action. Additionally, Plaintiff claims Defendant Tompkins is responsible for reviewing all grievances and failed to investigate of take action regarding Plaintiff's property.

On September 5, 2017, Plaintiff claims he sent complaints to TDCJ-CID leaders and the Board of Criminal Justice. Plaintiff asserts that his complaint letter was received by the Office of the Inspector General for the Texas Department of Criminal Justice and logged in as correspondence. Plaintiff claims the Office of the Inspector referred his letter to the Unit Warden and stated the following: "The Unit Warden investigates minor staff misconduct."

On September 21, 2017, Plaintiff claims he was summoned to One Building where Defendant Llamas, a captain, informed him that he was investigating Plaintiff's complaint against Defendant Boykin. Plaintiff claims Defendant Llamas threatened him by stating: "You have a long time to do to be filing grievances and causing problems." Plaintiff claims Llamas's statement "was directed with the same effect of ridicule, harassment, and threat from Plaintiff's filing of complaints and grievances."

Finally, Plaintiff claims Defendants Lorie Davis, the Director of TDCJ-CID, and Brewer, a former warden at the Stiles Unit, have been placed on notice of the alleged abusive conduct of Defendants Boykin, Woodard, and Jessup through complaints and grievances, but they have failed to take disciplinary action against them or otherwise control their behavior.

Addressed herein are the following claims against the following Defendants: Plaintiff's allegations of the denial of adequate medical treatment against Defendant Woodard; Plaintiff's claim that Defendant Banks acted with deliberate indifference to his safety; Plaintiff's claim of alleged theft or loss of personal property against Defendant Banks; Plaintiff's claims against Defendants Aaron J. Thompkins, Lori Davis, and Wayne E. Brewer alleging that the Defendants failed to properly investigate and respond to his grievances; Plaintiff's claims of retaliation against Defendants Jesus J. Llamas, Jeffrey R. Woodard, and Grace N. Ekeke; Plaintiff's claim he was denied due process by Defendant Lance C. Knod; and Plaintiff's claims of violations of prison policy against the Defendants.

Standard of Review

An in forma pauperis proceeding may be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) if it: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted or (3) seeks monetary relief from a defendant who is immune from such relief.

A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

In addition to the legal basis of the complaint, Section 1915 empowers the court to pierce the veil of the complainant's factual allegations if they are clearly baseless. *Denton v. Hernandez,* 504 U.S. 25, 32 (1992); *Ancar v. Sara Plasma, Inc.,* 964 F.2d 465 (5th Cir. 1992). A complaint lacks an arguable basis in fact if, after providing the Plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless*. Denton*, 504 U.S. at 32.

In *Denton v. Hernandez*, the Supreme Court "declined the invitation to reduce the clearly baseless inquiry to a monolithic standard." *Denton*, 504 U.S. at 33. Examples of complaints within the clearly baseless inquiry are those which describe fanciful, fantastic, or delusional scenarios. A complaint is factually frivolous if the facts alleged rise to the level of the irrational or wholly incredible. Pleaded facts which are merely improbable or strange, however, are not clearly baseless for Section 1915(d) purposes. *Id.*

A complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate when the Plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570).

Plaintiffs must state enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 570.

In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, all factual allegations in the complaint must be taken as true and construed favorably to the Plaintiff. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). However, conclusory allegations and a formulaic recitation of the elements of a cause of action will not suffice to prevent dismissal for failure to state a claim. *Twombly,* 550 U.S. at 555.

<u>Analysis</u>

*Elements of a Cause of Action under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 authorizes a suit in equity, or other proper proceeding for redressing violations of the Constitution and federal law by those acting under color of state law. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

*Eighth Amendment - Health and Safety*

The Eighth Amendment requires that cruel and unusual punishment shall not be inflicted, U.S. CONST. amend. VIII, and requires that prison officials "provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to ensure the safety of the inmates." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004).

The United States Supreme Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. *Id*; *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994).

    A.    <u>Medical Care</u>

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards in intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Medical records of sick calls, examination, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991).

Plaintiff's allegations fail to state a claim upon which relief may be granted. While Plaintiff states Defendant Woodard, a lieutenant at the Stiles Unit, did not allow inmates to receive diabetic insulin injections at the specific times prescribed by UTMB physicians, Plaintiff does not dispute that he did ultimately receive his injections. Further, Plaintiff has neither alleged nor demonstrated he did not receive his medication at the prescribed times during the remainder of the day when Defendant Woodard was not the shift supervisor or was on his days off. A review of Plaintiff's medical records reveals that his diabetes was monitored with glucose tests being routinely performed during the time relevant to his claim against Defendant Woodard. (Doc. #38-6 at 286-391).

7

Additionally, the Diabetic Flow Sheets show that Plaintiff routinely received insulin injections at the unit infirmary during the same period. (Doc. #38-6 at 1007-1016).

Although Plaintiff may not have received his injections at the exact time prescribed by UTMB doctors on a certain shift on certain days, Plaintiff's diabetes was routinely monitored and he routinely received his insulin injections. Plaintiff has stated nothing other than speculative harm regarding his alleged failure to receive his insulin injections at the exact time prescribed. Further, Plaintiff has failed to show either that Defendant Woodard knew or should have known that Plaintiff's failure to receive his insulin injections at the exact time prescribed posed a substantial risk of serious harm. Thus, Plaintiff has failed to show Defendant Woodard acted with deliberate indifference to his medical needs. At most, Plaintiff's allegations constitute nothing more than negligence and do not rise to the level of egregious intentional conduct required to state a constitutional violation under the Eighth Amendment. *See Gobert*, 463 F.3d at 351. Accordingly, Plaintiff's claims against Defendant Woodard should be dismissed as frivolous and for failing to state a claim upon which relief may be granted.[2]

B.   Safety

The Eighth Amendment duty to protect inmates from harm can be violated when a prison official acts with deliberate indifference by exposing a prisoner to physical assault through labeling him as a "snitch" to other inmates. *Schreane v. Beemon*, No. 12-30689, 575 F. App'x 486 (5th Cir. July 21, 2014); *Shafer v. Collier*, No. 6:19cv114, 2020 WL 13786598 (E.D. Tex. Aug. 6, 2020) (applying *Schreane* to a "child molester" label). However, "absent a showing that other inmates harmed [Plaintiff], there is no factual basis for a failure to protect claim." *Walzier v. McMullin*, No. 08-20195, 333 F. App'x 848 (5th Cir. June 17, 2009); *Monk v. Massey*, No. 5:22cv98; 2023 WL 9110925 (E.D. Tex. Aug. 11, 2023).

---

[2] Additionally, Plaintiff asserts he submitted a sick call request while confined in segregation seeking an appointment for a neck injury sustained during an alleged assault by Officer Boykin on August 5, 2017. Plaintiff claims he was scheduled for a sick call appointment on August 9, 2017, but officers refused to take him to the medical appointment so he could not prove the alleged assault took place. The officers, however, are not defendants in this action and, therefore, the claims will not be addressed.

Plaintiff claims Defendant Banks recklessly endangered his safety by announcing the nature of Plaintiff's convictions to all inmates in the lock-up area. While the comments of Defendant Banks are viewed by the court as reprehensible, Plaintiff's complaint is devoid of factual allegations satisfying the above standard. Verbal abuse alone is insufficient to state a constitutional claim. Therefore, Plaintiff has failed to satisfy the deliberate indifference test. Accordingly, Plaintiff's Eighth Amendment claim against Defendant Banks should be dismissed for failure to state a claim upon which relief may be granted.

*Deprivation of Property*

Next, Plaintiff complains of the alleged theft or loss of personal property. Plaintiff claims that, prior to his lock-up on August 5, 2017, Defendant Banks unlocked his locker and allowed two inmates to remove and steal his personal property. Plaintiff states that when he received his personal property on August 20, 2017, he noticed various personal items were missing. Plaintiff claims approximately $31.00 worth of commissary items were either stolen or lost.

A claim that an individual has been deprived of property by a person acting under color of law states a claim for a violation of the due process clause of the Fifth Amendment to the United States Constitution. Deprivations of property by state actors, however, even when intentional, do not violate the due process clause so long as an adequate post-deprivation remedy exists. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Geiger v. Jowers*, 404 F.3d 3771, 374 (5th Cir. 2005) (concluding the plaintiff failed to state a claim regardless of whether the deprivation of property was the result of negligence or intentional misconduct). Texas provides such a remedy, the state tort of conversion. In Texas, "[a]n inmate's allegation that his personal property was lost, confiscated, or damaged does not state a claim under 42 U.S.C. § 1983, even when prison officials acted intentionally." *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014); *see also Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) (holding that, in Texas, the tort of conversion is an adequate post-deprivation remedy); *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983) (holding that a state action for damages is an adequate remedy), *cert. denied*, 464 U.S. 897 (1983). As a

9

result, Plaintiff has failed to state a violation of his constitutional rights in connection with the alleged deprivation of his personal property. Accordingly, plaintiff's claims are frivolous and fail to state a claim upon which relief may be granted.

*Grievances*

Plaintiff asserts several claims that he submitted numerous grievances making various prison officials and administrators aware of the above alleged constitutional violations, but they failed to adequately investigate and resolve his complaints and grievances. Inmates do not have a constitutionally protected liberty interest in having their complaints resolved to their satisfaction, and so there is no constitutional violation when prison officials fail to do so. *See Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir.2005) ("Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As Plaintiff relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Accordingly, Plaintiff's grievance claims against the Defendants fail to state a claim upon which relief may be granted and should be dismissed.

*Retaliation*

Plaintiff's claims of retaliation against Defendants Kaylin R. Vinson and Pedro M. Boykin have been severed from this action and are proceeding as part of a separate civil rights action. Plaintiff, however, also complains of various other more general alleged acts of retaliation by other Defendants.

To establish retaliation, an inmate is required to prove: (1) he was exercising a specific constitutional right; (2) the defendant intended to retaliate against the inmate for exercising that right; (3) a retaliatory adverse act on the part of the defendant; and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Causation "requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019); *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998). "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when

taken for different reasons, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). This includes a prisoner's First Amendment right to file grievances concerning his treatment, as retaliation has the potential to discourage a prisoner from exercising that right. *See Morris*, 449 F.3d at 686. Conclusory allegations, however, are insufficient to support a retaliation claim. *Woods*, 60 F.3d at 1166. Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).

In this case, Plaintiff has failed to show a sufficiently adverse action regarding his claims against Defendants Jesus J. Llamas, Jeffrey R. Woodard, and Grace N. Ekeke concerning his allegations of retaliation. While Plaintiff may have a firmly held belief that certain actions taken against him were taken out of retaliation, Plaintiff has failed to produce either direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. Further, language that contains threats, standing alone, and gestures do not amount to a constitutional violation. *Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859 (5th Cir. 2020) (citing *McFadden v. Lucas*, 713 F.2d 143, 145 (5th Cir. 1983)). Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *See Bender v. Brumley,* 1 F.3d 271, 274 n. 3 (5th Cir. 1993); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983).

Plaintiff's allegations of retaliation are no more than mere speculation on the part of Plaintiff and do not show that but for a retaliatory motive, the actions complained would not have occurred. Thus, plaintiff has failed to state a claim of retaliation under § 1983 against Defendants Jesus J. Llamas, Jeffrey R. Woodard, and Grace N. Ekeke, and the claims should be dismissed as frivolous and for failing to state a claim upon which relief may be granted.

*Due Process*

Prisoners charged with rule violations are entitled to certain due process rights under the Fourteenth Amendment when the disciplinary action may result in a sanction that will impose upon a liberty interest. State-created liberty interests protected by the Due Process Clause are generally

limited to freedom from restraint imposing an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472 (1995).

In *Sandin*, the Court adopted a new and different methodology for determining whether a state has created a protected liberty interest to benefit prison inmates. *Id*. at 477-484. Rather than focusing on the presence or absence of mandatory statutory or regulatory language, [ *See,* e.g., *Hewitt v. Helms*, 459 U.S. 460 (1983).] the Supreme Court determined that the reviewing court should consider the nature of the challenged state action and whether it involved such a significant departure from normal prison conditions that the state might have conceivably created a liberty interest. *Id*. at 480-481.

Protected "interests are generally limited to state-created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). In Texas, prisoners eligible for release on mandatory supervised release, may have a protected liberty interest in previously-earned good conduct time. *See Kimbrell v. Cockrell*, 311 F.3d 361, 362 (5th Cir. 2002); *Malchi v. Thaler,* 211 F.3d 953, 956-58 (5th Cir. 2000). However, being placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. *See also Madison*, 104 F.3d at 768 (concluding that imposing thirty days of commissary and cell restrictions as punishment constitutes mere changes in the conditions of a prisoners confinement and do not implicate due process concerns); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("the mere opportunity to earn good-time credits [does not] constitute a constitutionally cognizable liberty interest sufficient to trigger the protection of the Due Process Clause."), *cert. denied, Luken v. Johnson,* 517 U.S. 1196 (1996); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.) ("An inmate has neither a protectible property nor liberty interest in his custody classification . . . ."), *cert. denied*, 488 U.S. 985 (1988).

The due process that an inmate must receive in a disciplinary hearing is: (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken, and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Walker v. Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993).

Plaintiff claims he was denied due process regarding a prison disciplinary charge he received on August 8, 2017 for Threatening an Officer. As a result of his conviction on the disciplinary charge, Plaintiff states he received the following punishment: (1) a loss of recreation, commissary, and telephone privileges for 45 days; (2) cell restriction for 45 days; and (3) a reduction in time-earning classification from S3 to S4.

Plaintiff was reduced in time-earning classification, but did not lose previously earned good time credits. The mere opportunity to earn good conduct time credits based on a reduction in time-earning classification, however, does not constitute a constitutionally cognizable liberty interest. Therefore, the prison official's alleged failures to provide due process are not actionable. Accordingly, Plaintiff's allegations fail to state a claim upon which relief may be granted.

*Violations of Prison Policy*

Throughout Plaintiff's complaint, Plaintiff complains of the Defendants' alleged failure to follow prison rules or policies with respect to his various claims. Plaintiff's claims, however, fail to state a claim upon which relief may be granted. The Defendants' failure to follow prison regulations, rules or procedures does not rise to the level of a constitutional violation. *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986). Accordingly, Plaintiff's claims are without merit and should be dismissed for failure to state a claim upon which relief may be granted.

<u>Recommendation</u>

Plaintiff's complaint should be dismissed for failure to state a claim upon which relief may be granted.

<u>Objections</u>

Within fourteen days after being served with a copy of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636 (b)(1)(C).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen days after service shall bar an aggrieved party from the entitlement of *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

**SIGNED this the 12th day of August, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE